In Ejectm’t for 400 a of Land Upon the facts agreed the Case is
W’m Andrews seised in fee of 1000 a granted by Pat to one Taylor by Deed poll dated in 1664 for divers valuable cons’s (but none particularly expressed) demises leases & to farm lets the said premes to Tho’s Harmonson for his and his wifes life And after their decease he gives grants enfeoffs & confirms the said Land to four Sons of Harmonson as follows to Thos. 300 a. to W’m 250 a. to John 250 a. & to Henry 200 a. And if old Harmonson & his wife decease before the Sons come of Age it shall be lawful for them at the age of 21. to enter upon their parts The same to have enjoy & possess as their own proper & real Estates in fee Simple to them & their heirs lawfully begotten of their several & respective bodies forever
This is the substance of the Deed It is recorded but no livery appears to be made
Tho’s Harmanson the fa’r enters & in 1667. obtained a pat for 800 a as Surplus Land within the bounds of the said Pat. to Taylor To hold to him & his heirs
After which he caused a Division of the 1000 a to be made *B148 among his four Sons according to the proportions given them by the Deed And being seised both of the 1000 & -800 a by his Will dated in 1696 he devises thus “ I confirm to my four eldest “ Sons the several Dividends of Land by me given to them & their heirs forever as the same was divided by Mr. Dan’l Eyre “ which they have passed Bonds to each other to be content with “ under the penalties & according to the Conditions there incerted.”
And in another Clause he devises to the said Sons in fee “All “the remaining part of his Dividend which lies at the head of “ the Land given them & was not divided with the .rest to con- “ tain their several Divisional lines as they now run to the head line &c.
The Lands mentioned in the first devise are the 1000 a Those mentioned in the second devise are the 800 a.
Tho’s Harmanson died Henry one of the Sons entered into 200 a parcel of the 1000 a Allotted him by the Division & devised to him as aforesaid & into other 200 a contiguous parcel of the said 800 a. Which said 400 a. are the premes in queon
Henry Harmanson by his Will dated in 1709. devises the said premes (by the name of his Dwelling Plant.) to his wife for life After her death to the Child she the went with (if a
[Note by W. W. S. — There is a skip in the pagination in the book itself; copy is followed.]
[141] some thing as the Son He is 'willing they sho’d have their brothers Estate but if he won’t consent to it Then he has provided an equivalent viz. The Estate he had given to his Son
This is the conste, we contend for the Son would not make over his own Estate Therefore we say we are intitled to the equivalent But the Son says he will have his own Estate & the other too I must submit whether this can be reasonably thought the tes’tors meaning It is no obj. to say the Estate given the Son was only in Rem’r And that it was unreasonable he sho’d make over his Estate upon so remote an expectancy. The business is whether the testor has ordered it so If he has it must be submitted to It was certainly in the Sons election whether he would accept of this Rem’r upon the terms it was given And if he did not think it worth his while Ought he now because in event the Rem’r is come to take Place set up a title discharg’d of the terms or condition upon which it was given
Such reasoning has more of amusement than Argument It *B149 was I conceive as much the testors intention that his dauters sho’d have Johnsons Plant’n or as an equivalent an Estate in Rem’r in the dwell’g Plant’n as it was that the son sh’d have any estates in the dwell’g plantation If the Son will not let us have Johnsons Plant, how can this intent be satisfied unless we have the dwell’g Plant’n
Then nothing can be stronger to shew the testors intent that the Son sho’d have nothing in the dwelling Plant’n if he did not perform the Cond’n He not only limits it over to the dauter but adds “ My Son to have no part or parcel of my Estate” He intended to oblige him under the penalty of losing all to make over the Land to his Sisters And since he has not done so What pretence of right can he have
It is no uncomon thing in Wills to construe the the Copulative (and) as the Desjunctive (Or) And so vice versa where such construction will best support the tes’tors meaning There are many Cases in the Books to this purpose
1 Sho. 322. sev’l Cases put of Cov’t so constr. Saul & Gerrard Cro. El.
Now here in this proviso if the first Copulative (And) is read (Or) the Case will admit of no dispute for then it will run thus If the Child be a dauter Or if my Son should enjoy the dwell’g Plant’n there could not then possibly be a doubt but that if the Son by any Event came to enjoy the dwell’g Plant’n It sho’d go over if he did not make over the Land to his Sisters And as that from other Parts of the Will may be reasonably collected to be the tes’tors meaning I must submit whether it be any forced interpretation to construe (And) here as a Disjunctive
Pol. 049. Price & Hunt.
This may appear the more reasonable upon this cons, that those words “ If my Son sho’d enjoy the dwelling Plant’n &c.” are no ways necessary but the sence & meaning of the tes’tor would be compleat without them Unless they were intended for the purpose we contend
The Sentence would run thus with’t those words “ If the “ Child be a dauter And my Son sho’d not make over &c.” then I give the dwell’g Plant’n to my Dauters.
[142] If the Child had been a dauter the Son would have enjoied the dwell’g Plant’n as the next in Rem’r The other words then “ or if my Son sho’d enjoy &c.” were not necessary unless it *B150 was to signify that if his Son by any event came to the dwell’g Plant’n it sho’d go over if he did not perform the Cond’n
If then it was the Testors intention that the Son sho’d have no Estate in the dwell’g Plant’n unless he made over the Land to his Sisters which he has not done. It will scarce be a queon I believe but the Lessor has a good title The Case will be then no more than this
Devise to A. for life Rem’r to B. in tail Rem’r to C. in tail upon condition that he do such an Act And if he fails then to D.
It cannot be doubted I think but that this Devise to D. is good by way of contingent Rem’r. It is a Rem’r to take effect upon this contingency in case the Son disturbed or did not make over the Land to the dauters But altho’ this Rem’r was contingent in its creation Yet upon the Sons entring & aliening the Land it became vested for then the Contingency happened upon which it was to take effect And now the mesne Estates being spent the psons in Rem’r have undoubtedly a good title
Such a lim after a fee simple would be good tho’ not as a Rem’r Yet as an Executory Devise as Fulmersons case cited in Pell & Brown Cro. Ja. 592. which was shortly thus a Devise to Sr. Edw. Cleer & his Wife & the heirs of Cleer upon Cond'n that they sho’d convey lands to the Ex’ors And if they failed their Estate sho’d cease & the Ex’ors should have the Land &c. And it was held that this Lim tho’ after a fee was good by way of Executory Devise
Here the lim is after an Estate tail upon which a Rem’r may be limited And therefore it is good by way of contingent Rem’r Such á Rem’r is contrary to no rule of Law and when a man has a fee simple He has such an absolute power & dominion over his Estate that he may give it in any manner & under what Conditions restrictions & Lim he pleases so his disposition do not clash with the rules of Law And so I pray Judgm’t for the Pit.
Vide 2 Mercer. 44.
This Case was compromised.